Garland, J.*
The petitioners allege, that the defendants are indebted to them in the sum of $11,666 66, with interest thereon at the rate of eight per cent from the 21st of May, 1836, as the holders and endorsees of a note for the above sum and interest, *408 drawn by Wm. Hunter, of the parish of Natchitoches, payable to Chas. A. Bullard on the 1st of May, 1842, which note was secured by a mortgage on the undivided half of a plantation and slaves in the aforesaid parish, upon which the defendants Lambeth & Thompson also had a mortgage, concurrent with or next in rank to theirs, in consequence of a waiver in their favor made by the said Chas. A. Bullard of his right of mortgage, to secure the payment of a similar note, due one year previous, also executed by Hunter. The petitioners aver, that Lambeth & Thompson, on or about the month of June, 1842, “ by divers representations, by which they (petitioners) were led into error, obtained possession of their said note without consideration that Lamr beth &> Thompson, combining with their co-defendant to deprive them of their rights, transferred said note to him, with the intention that he should become the purchaser of the plantation and slaves so mortgaged, and use the amount of it in payment of the price; that said plantation and slaves were, in the month of November, 1842, sold at a sheriff’s sale, and purchased by C. A. Jacobs for the price of $60,982, about $18,000 of which sum was paid by the amount of the note and interest so wrongfully and erroneously obtained, a part or the whole of which, was by said Jacobs passed to the credit of Lambeth & Thompson, who were indebted to him; wherefore they ask fora judgment for the aforesaid sum and interest, and for general relief.
The defendant Jacobs, after a general denial, avers, that the plaintiffs sold to him all their title and interest in the note mentioned and in the mortgage given to secure it, in full payment for which he executed his four notes, payable to them at nine and twelve months, amounting altogether to the sum of $9461 25, which by agreement were to remain deposited in the hands of a third person, and be delivered whenever he should receive the ■ titles to the aforesaid tract of land and slaves, on which the plaintiffs claimed to have a mortgage derived from Hunter. He alleges, that the money intended to be secured by his notes was the . value at which the plaintiffs estimated their note and mortgage, and that it was a condition precedent that the notes should be deposited until the completion of the title. That the plaintiffs always looked upon the transaction as a sale of their interest in *409 the note and mortgage, and on his (respondent’s) notes as the price; and that they endeavored to hasten the completion of his titles, so that they might obtain possession of them. He further avers, that since the institution of this suit, he has been advised that no obstacle exists to prevent a completion of his title to the property ; and that, being unwilling to keep the plaintiffs out of the purchase money for their aforesaid interest, longer than was necessary to his security, he has caused a tender of his notes, so deposited, to be made to the plaintiffs, who haverefused to receive them ; and that they are still in the possession of the depositary, subject to the plaintiffs’ order.
Lambeth & Thompson commence their answer by a qualified general denial, and then proceed to aver, that, the plaintiffs, being willing to sell all the title and interest they had in the note of Hunter for the sum aforesaid, agreed with Lambeth to sell the same for two notes of their co-defendant Jacobs, to be dated on the 1st of June, 1842, one payable at nine months for $4676 25, to the order of the plaintiffs, and the other at twelve months from said date for the sum of $4085, also payable to them; and that they (plaintiffs) drew a receipt for the said respondents to sign, which they did, but that the plaintiffs never called upon them for it. They further state, that at the time they were negotiating for the .purchase of the interest of the plaintiffs in the aforesaid note, they (plaintiffs) well knew that they were acting for their co-defendant (Jacobs,) and not for themselves, wherefore, they (plaintiffs) “ chose rather to place themselves in direct privity with the real vendee, and accordingly entered into a new and distinct agreement, as to the purchase money and the time and manner of payment with him, with which these respondents had nothing to do.”
The respondents aver, if they should be held responsible because of their agency in behalf of Jacobs in said transaction, that he (Jacobs) gave the price which the plaintiffs required for their interest in said note, and executed his four promissory notes for the sum to be paid, two payable at nine months and two others at twelve months, which were deposited in' the hands of the person agreed upon, to be held and delivered when he (Jacobs) should receive titles for the tract of land and negroes of Hunter, which were mortgaged to secure the payment of said note held *410 by the plaintiffs. The answer then concludes in very nearly the-same terms as that of the other defendant.
1 he origin of the note in controversy is fully stated in the opinion of this court in the cases of Bludworth &c. v. Hunter, Lambeth & Thompson, Intervenors and of Bludworth v. Lambeth & Thompson, decided at the last October term, in the Western District.* It is there spoken of as a note in existence, but in the possession of an unknown person. The mortgage to secure the payment of it, and of the one held by Bludworth & Bullard,, is fully stated; also the postponement or concession of Charles A. Bullard of his privilege and mortgage in favor of Lambeth & Thompson, over the note then held by Bludworth & Bullard. The fact is, the records in those cases, except in relation to what took place in this city immediately between the plaintiffs and defendants, enabled us to state more in detail the real origin, progress and conclusion up to December, 1842. of the numerous and complicated sales, mortgages, transfers and transactions between Hunter and Charles A. Bullard, and between them and Lambeth & Thompson, and between Bludworth <fc Bullard and Jacobs and the Commercial Bank, than the one now before ns does, and we therefore refer to the statement in those cases, with the above exception, as being sufficient to give a full view of the grounds and points we feel called on to decide.
At the sale made by the Sheriff of the parish of Natchitoches, on the 4th of June, 1842, under the order of seizure and sale obtained by Bludworth & Bullard against Hunter, Lambeth <fc Thompson were the last and highest bidders. The Sheriff refused to make them a deed, because they refused to pay the sum which the Sheriff contended was coming to the plaintiffs in execution, and over whom they (L. & T.) contended they had a preference, in consequence of the postponement of privilege and mortgage made by Charles A. Bullard, the assignor of Bludworth & Bullard, in the act of mortgage given by Hunter to Lambeth & Thompson, he (the Sheriff) saying, ho would not do so, un *411 til ordered by tbe court. Lambeth took no step by judicial process to compel the Sheriff to complete the sale, or to make another, but returned to New Orleans shortly after, and from the admissions in the answer, we find him, as the agent of his co-defendant Jacobs, negotiating with the plaintiffs, who are residents of the city, and not shown to have been present at the sale, or as having any knowledge of it, to purchase the note held by them and due but a few weeks previously, representing that the undivided half of the land and slaves had only sold for $18,400, out of which the City Bank of New Orleans was to receive one thousand dollars, and that the residue of the sum bid was to be divided between the plaintiffs and said Lambeth & Thompson, in consequence of their preference over .Bludworth & Bullard ■; and a statement in the hand-writing of a clerk of Lambeth Thompson, is exhibited by the plaintiffs, proved to have been copied by said clerk from a paper given to him for the purpose by Lambeth, showing how the fund was to be divided, and showing that the amount coming to tbe plaintiffs was less than $9000. The first written document which presents itself, is a receipt dated June 22d, 1842, signed by Lambeth & Thompson, written by one of the plaintiffs, which states that they (L. & T.) have received the note of Hunter of them, (plaintiffs,) which is secured by mortgage, as stated, on the plantation and negroes on Red River; and then proceeds to say, “ that in final settlement of this note we have this day given to Hills & Sinnott two notes drawn by Chas. A. Jacobs, as follows; oue dated 1st June, 1842, for $4676 25 payable at nine months after date, to their order,- and one of the same date for $4085, payable at twelve months after date, to their order.” The receipt then binds Lambeth & Thompson not to raise the mortgage which secured Hunter’s note, “until the notes of Jacobs shall be paid in full, and notes divided into four for the same amount.” Five days after the date of this receipt, it is shown that Jacobs, and one of the plaintiffs, (Sinnott,) called on Matthews and deposited with him four notes, dated 1st June, 1842, two for the sum of $2338 13, each payable at nine months from date, and two for the sum -of $2392 50, each payable one year from date, where they were to remain, until Jacobs should “receive a conveyance and titles for *412 a tract of land and slaves of Wm. Hunter on or near Red River,” of which fact Jacobs was to give due notice, and the notes to be then delivered to the plaintiffs. The letter directed to Matthews says, these four notes are given in part consideration of the purchase of said plantation and slaves. After this we do not find either Jacobs or Lambeth & Thompson attempting to prosecute further the pretended sale made on the 4th of June, 1842 ; but the latter caused an execution to issue on a judgment obtained by the Commercial Bank against Hunter and C. A. Bullard, and under it, the whole tract of land sold by C. A Bullard to Hunter, was, in the month of November, 1842, sold, together with thirty-five slaves, the crop of cotton, and all the plantation utensils and working cattle, subject to the various mortgages existing at the time in favor of the plaintiffs, as assignees of C. A: Bullard, and of Lambeth & Thompson and others. At this sale, Jacobs be^ came the purchaser of the whole property for $60,962 67, and the Sheriff made him a deed, which declaims that he paid $4000 in cash, and that the balance of the bid was retained by the purchaser to meet the conventional mortgages shown to exist on the place. On the 27th of February, 1843, nine days after this suit was commenced, Jacobs notified Matthews in writing to deliver to the plaintiff the notes deposited with him, as the conditions had been complied with, according to the agreement. The plaintiffs refused to take them, and on the 13th of March following> Lambeth, acting as the agent of Jacobs, goes to Natchitoches, and, in violation of the stipulation in the receipt of the 22d of June, 1842, cancelled the mortgage in favor of plaintiffs, and delivered up the note. It is also proved, that Lambeth & Thompson and Jacobs, were formerly partners in business; that the former were largely indebted to the latter; that during the time these transactions were going on, they carried on business in the same house, on the same floor; and that the benefit of this speculation was to go to Jacobs and themselves, as he was to give them credit on their indebtedness to him.
The court below gave a judgment for the plaintiffs against Jacobs, for $16,650 33, with interest at eight per cent, from November, 1842, on $11,666 66, until paid ; and a judgment in favor of Lambeth & Thompson. Jacobs only has appealed.
*413 The appellant’s counsel has called our attention to a bill of exceptions taken to the opinion of the court, in admitting in evidence a document marked H, which is a copy of a statement proved by Logan to have been made by him at Lambeth’s request, from an original handed to him for the purpose, which copy was given back to- Lambeth with the original and was in possession of the plaintiffs at the trial. They made affidavit that they had seen the original in the possession of Lambeth, and called upon the defendants to produce it in court, notifying them that they would otherwise give the copy in evidence. The defendants, Jacobs and Thompson, declared that they had never seen such a paper, did not have it in their possession, and never had ; to which statements they offered to make oath. They also stated that Lambeth was absent; that he only could explain the statement; that he would return in about ten days; that they were taken by surprise ; and they asked for a continuance. The Judge refused the continuance, admitted the copy of the statement in evidence, and the defendants excepted.
The objection made by the counsel of Jacobs to admitting the copy of the paper in evidence, is, that the original was not accounted for. In overruling this objection, we think the Judge did not err. The clerk of the defendants, Lambeth & Thompson, swore that he had given it to Lambeth in the counting-house. We may, therefore, well suppose that it remained there in possession of the firm. When called on to produce the paper} neither Jacobs nor Thompson made any effort to find it. They do not seem to have gone to their common counting-house to make a search, nor to have asked for time to do so. They used no diligence to find the original; and we cannot presume that Lambeth excluded them from an examination of the documents and papers in the common office in his absence. They said they knew nothing of this paper; but did not manifest any wish to obtain information, or seek for it. We are also of opinion that the Judge did not err in refusing to continue the case. It was on trial, and the- absence of Lambeth, one of the defendants, was no cause for a continuance. He could not have been examined as a witness if he had been present, and his statements could have had no influence, except upon his co-defendants. If the *414 plaintiffs or defendants in a suit do not fully communicate with each other, and give all the information they possess, their opponents are not to be injured-by it. It Was no fault of the plaintiffs if the acts of one of the defendants surprised his co-defendants.
The document thus received in evidence, contains a brief statement of the sale from O. A. Bullard to Hunter of the half of the land and slaves, the names of the latter, the price, and terms of payment. It then goes on to state, what slaves had been previously sold by the Sheriff; how many had died ; and how many had been sold by Hunter himself. It then gives the appraisement in round numbers ; the price bid at the sale on the 4th of June, 1842, say $18,400 ; and deducts a previous mortgage of $1000, showing a balance of $17,400, as all that was applicable to the two liens of $11,666 66|- each, with interest for about six years on the one held by the plaintiffs, and for two years on the other. What Lambeth orally represented to the plaintiff or his co-defendants we are not informed; but it is a fair inference, that he and Jacobs understood each other, as they lived together, and one acted as the agent of the other in a matter that was to be mutually beneficial to them. The document submitted was calculated to induce a belief that there must be a heavy loss on the notes, and that there had been a sale of the property by the Sheriff. The other testimony shows, that there was a representation as to a difficulty about the title ; and, altogether, 'a case was made out, Well calculated to produce an impression that the plaintiffs Would have to submit to a serious loss, or to a protracted and questionable suit in a distant parish. It is upon these grounds that the plaintiffs say they were led into error ; and we think the evidence supports the allegation. We think both error in fact and motive, are conclusively shown.
We have been favored by the counsel for the defence with voluminous briefs, and long oral arguments, to prove, first, that there was no error in the transaction; secondly, that if there were, the suit should have been brought for a rescission of the sale ; and lastly, that there was a legal adjudication to Lambeth & Thompson, on the 4th of June, 1842.
In support of the first ground, it was much relied on, that the first arrangement between Lambeth and the plaintiffs was not *415 consummated, or was changed, and that they entered into direct arrangements with Jacobs ; and that he did not deceive them, nor make any erroneous impressions. Lambeth was the agent of Jacobs in the transaction ; he gave all the information, and made the representations calculated to produce the effect; and when that was done, it was easy for the principal to conclude the arrangement. When the relations of Jacobs and Lambeth are considered, as shown hy the testimony, it is impossible to doubt that one well knew what the other was doing.. If they were Lambeth’s representations that deceived the plaintiffs, the defendant Jacobs must abide by them, for he was his agent.
The second ground of defence is not, in our opinion, more tenable than the other. The plaintiffs never pretended that they had made a sale of their note and mortgage to Jacobs, or to any one else. Their allegations are, that by the representations of the defendants they obtained possession of the note and mortgage illegally, and used it for their own benefit, not having given any consideration therefor. The fact of there being a sale, is what the plaintiffs never admitted, but on the contrary, have always denied; and the transaction cannot be so considered. The parties do not seem to have considered the transaction as a sale, on the 22d of June, 1842, when Lambeth <fc Thompson gave their receipt for the note. They call it a settlement; and promise to preserve the mortgage for plaintiffs’ benefit. Nor does Jacobs, in his letter to Mathews, say any thing of having purchased the note and mortgage. Nothing in the parol or written testimony induces us to conclude that a sale was made, or that one was intended.
The third point is not, in our opinion, sustained. It is clear that Lambeth did not acquire any rights by his bid made on the 4th off June, 1842, when the Sheriff offered the undivided half of the land and slaves for sale, under the order of seizure obtained by Bludworth & Bullard. He has always contended that the mortgage of Hunter to Lambeth & Thompson, for upwards of $29,000, with interest, has a preference over that in favor of Bludworth & Bullard, and on this ground refused to pay the amount of his bid. Assuming this to be true, then there are mortgages for more than $40,000, exclusive of interest, on the property; and *416 it could not be sold under a younger mortgage, unless a sum exceeding the amodnt of all anterior mortgages was bid. Only $>1S,400 was bid by Lambeth, which is not one-half the amount which he says has a superior lien and privilege over that of the then seizing creditor. Code of Pract. art. 684. The Sheriff; therefore, had no right to make any adjudication on the bid made on the 4th of June, 1842. But let us suppose that the Sheriff could have sold under the execution of Bludworth & Bullard ; then he was right in refusing to complete the sale to Lambeth as he would not pay the price he had offered. In no aspect of the case can that bid confer any right to the property. Code of Pract, art. 689.
But, say the defendants’ counsel, their client was not bound to ' pursue any particular mode of completing his title. This perhaps, may be true ; but the particular bid was used for the purpose of imposing on the plaintiffs, and being invalid, it cannot be made effective, and fix the amount the plaintiffs shall receive under their mortgage.
The counsel further urges, that there are various errors in the calculations made by the Parish Judge, by which the amount of the judgment was ascertained. This is probably true; but, as our calculations, made from different data, show that as large an amount should be paid to the plaintiffs, we will not attempt to correct calculations which will not benefit their clients. We are not responsible for the reasons that may induce the inferior judges to come to their conclusions. It is our duty to see if the judgment is correct; and being satisfied that substantial justice has been done between the parties, we will not disturb the judgment.

Judgment affirmed.

 Bullard, J. did not sit on the trial of this case, having an interest in the question.

 The opinion in these cases, which were.tried together, was pronounced at the last October term, but the judgment did not become final until the present term. The opinion will be found in the 9th volume of these Reports, p. 256.